## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRADLEY W. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-192-SPS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, [1] | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

The claimant Bradley W. Johnson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born April 25, 1991, and was twenty-two years old at the time of the administrative hearing (Tr. 140). He has a high school education, vocational training in auto mechanics, and no past relevant work (Tr. 34, 68). The claimant alleges that he has been unable to work since an amended onset date of March 8, 2012, due to depression, schizophrenia, asthma, and panic disorder with agoraphobia (Tr. 33, 36, 163).

### Procedural History

On March 12, 2012, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 140-48). His application was denied. ALJ Bernard Porter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 10, 2014 (Tr. 12-22). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he could occasionally climb ramps and stairs; never climb ladders or scaffolds, work around unprotected heights or moving

mechanical parts, or have concentrated exposure to humidity, wetness, dust, fumes, or gasses; and must avoid temperature extremes (Tr. 16). The ALJ further imposed the psychologically-based limitations that the claimant was limited to simple tasks and simple work-related decisions, occasional interaction with supervisors and co-workers, and no interaction with the public (Tr. 16). Additionally, the ALJ found that the claimant would be off-task up to five percent of the workday (Tr. 16). The ALJ then concluded that although claimant had no past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.,* housekeeper/cleaner, small products assembler, and inspector/packer (Tr. 20-21).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) account for his moderate difficulty in maintaining concentration, persistence, or pace; and (ii) evaluate the medical evidence, specifically, the opinions of social workers Ashley Brown-Boyd and Lori Bachman, and treating physicians Dr. Dyson and Dr. Word. The Court agrees that the ALJ did err in his analysis of the treating and "other source" evidence, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of anxiety disorder, panic disorder with agoraphobia, attention deficit hyperactivity disorder ("ADHD"), depression, personality disorder, asthma, and persistent left superior vena cava (Tr. 15). The medical evidence related to the claimant's mental impairments reveals that the claimant was treated for panic disorder with agoraphobia at Southwest Arkansas

Counseling & Mental Health Center ("SACMH") from June 2007 through March 2013 (Tr. 283-370, 402-06, 409-10, 427-50). On October 23, 2007, the claimant established care with psychologist Cathy Word, Ph.D., an SACMH provider, who regularly treated him for panic disorder until June 2011 (Tr. 314-36). Dr. Word generally noted the claimant was making good progress towards treatment goals, however, she did note a relapse of panic symptoms in January 2010 after his grandmother was hospitalized (Tr. 323). On January 21, 2010, Dr. Word wrote a letter to the claimant's high school requesting an accommodation due to his anxiety and lasting until he no longer required prescription anti-anxiety medication (Tr. 563-64). Specifically, she requested that the claimant be allowed to sit near the door or leave class to regain his composure, and that he not be required to read aloud or answer questions in front of the class (Tr. 563-64). She requested instead that any reading aloud be done in front of the teacher only, and that he demonstrate his knowledge on written quizzes before class (Tr. 564).

Dr. Cori Dyson, also an SACMH provider, managed the claimant's psychotropic medications between June 2010 and May 2012 (Tr. 360-70). Until January 2012, Dr. Dyson generally noted the claimant was doing well on his medications and that his anxiety symptoms were improving. At a follow-up appointment on January 23, 2012, however, Dr. Dyson noted the claimant had a relapse of his panic disorder following his grandmother's hospitalization, and had been unable to control it ever since (Tr. 370). At a follow-up appointment on May 11, 2012, the claimant reported he had gone to a movie and to a baseball game where the stands were "packed," and Dr. Dyson noted a dramatic

improvement (Tr. 410). She discussed the possibility of the claimant working at a lawn care business, and the claimant agreed it would be possible (Tr. 410).

On March 26, 2012, Dr. Dyson completed an MSS wherein she described the claimant's functional limitations related to his panic disorder as follows:

> Varies – at times is very limited in how far he can get out of comfort zone (home) – a few blocks, at other times he is able to drive around small home town with minimal difficulty. At his best he can drive to a nearby small town. He is able to go to a job, however his anxiety returns with only mild stressors and he has been unable to keep a job. He has trained to be a mechanic and is too slow for several repair shops (Tr. 530-31).

Social worker Ashley Brown-Boyd, an SACMH provider, counseled the claimant between July 2011 and February 2013, and during this time consistently noted he was making "some progress" towards treatment goals (Tr. 337-39, 409, 438-50). In September 2011, Ms. Brown-Boyd noted the claimant scored within the mild range on an anxiety inventory, and was receptive to treatment that day, but struggled to maintain concentration and focus (Tr. 338). On February 24, 2012, the claimant reported increased anxiety due to his grandmother's hospitalization in December 2011, and Ms. Brown-Boyd noted the claimant "struggle[d] to articulate and express self," and had poor peer-aged socialization (Tr. 339). By November 2012, the claimant reported doing "a little bit better" and being able to go into several smaller stores for a short period of time (Tr. 446).

On September 11, 2012, Ms. Brown-Boyd completed a Medical Source Statement ("MSS") wherein she opined that the claimant was moderately[3] limited in nine areas, including his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; and accept instructions and respond appropriately to criticism from supervisors. (Tr. 400-01). Ms. Brown-Boyd further opined that the claimant was markedly[4] limited in eight other areas, including his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 400-01).

On May 2, 2012, consultative examiner Theresa Horton, Ph.D. conducted a mental status examination of the claimant (Tr. 395-98). Dr. Horton observed that the claimant appeared anxious; had sweaty hands that he would wipe on his shorts; paced around the room at times; had excessive motor movement, but no involuntary movement; and had a somewhat odd presentation (Tr. 397). Dr. Horton found the claimant's thought processes were logical, organized, and goal-directed; his mood was predominately anxious; his recall and memory were intact; his concentration and fund of information were adequate; his judgment was appropriate; and his insight was fair (Tr. 398). She opined that the

---

[3] The form completed by Ms. Brown-Boyd and Ms. Bachman (see below) defines moderate as "an impairment which affects but does not preclude ability to function." (Tr. 400, 522).

[4] The form completed by Ms. Brown-Boyd and Ms. Bachman (see below) defines marked as "an impairment which seriously affects the claimant's ability to function independently, appropriately, and effectively." (Tr. 400, 522).

claimant appeared capable of understanding, remembering, and managing simple and somewhat more complex instructions and tasks, though his slow pace, distractibility, and dizziness would interfere with completion of tasks (Tr. 398). Dr. Horton further opined that the claimant did not appear capable of adequate social and emotional adjustment into occupational settings, and likely also did poorly in most social settings (Tr. 398).

On February 20, 2014, Ms. Bachman, also an SACMH provider, completed an MSS similar to Ms. Brown-Boyd's, except she found the claimant was markedly limited in his ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting (Tr. 522-23). In support of her opinions, Ms. Bachman included a summary of the claimant's history and course of treatment (Tr. 524-29). She noted she had treated the claimant since April 2013, although none of her treatment notes are in the record, and that the claimant's previous diagnosis of ADHD was not part of his current diagnoses (Tr. 524). Ms. Bachman stated that over her course of treatment, the claimant's panic attacks had been reduced to once per week (while remaining primarily in his home), but that he was currently experiencing up to four panic attacks per day (Tr. 528). She noted on January 31, 2014, the claimant had a panic attack in a store parking lot twenty minutes after taking a Xanax, but was able to walk around the car in the parking lot several times (Tr. 528). She further noted it took twenty minutes of supportive talk therapy before he would walk through the store's doors (Tr. 528). She

concluded by stating that the claimant was not currently capable of obtaining employment (Tr. 529).

At the administrative hearing, the claimant testified that he drives less than six hours per week, and that his driving typically consisted of going to town to purchase a soda from a vending machine (Tr. 34). He further testified that the main reason he could not work was due to his panic disorder with agoraphobia which causes him to be very nervous around other people and impairs his ability to go into a business or any kind of store (Tr. 36). He also stated he has difficulty staying focused, particularly when he is having a panic attack (Tr. 35, 39). The claimant stated that his mother prepares his daily medications because he cannot remember if he has taken them or not (Tr. 46). The claimant further testified that he experiences seven to ten panic attacks per week, including at home when he attempts to cook and at stores (Tr. 41-42). He stated that his panic attacks are less severe if he is accompanied to a store by his mother or father (Tr. 42). He further stated his panic attacks last from five minutes up to an hour, and cause him to get dizzy, have trouble sitting still, and "pace the floor." (Tr. 43).

In his written opinion, the ALJ summarized the claimant's testimony, and some of the medical records. The ALJ referenced Dr. Dyson's treatment notes as support for his finding that the claimant's anxiety responded well to medication, but entirely ignored her March 2012 MSS (Tr. 18). In discussing the opinion evidence related to this appeal, the ALJ gave significant weight to Dr. Horton's opinion, finding that the evidence showed the claimant was able to adjust to situations in which there are interactions with few people, but that his anxiety tends to surface when he is in crowded places such as large

stores or restaurants (Tr. 19-20). As to the opinions of Ms. Brown-Boyd and Ms. Bachman, the ALJ adopted their opinions that the claimant was markedly limited in social functioning, but gave little weight to the remainder of their opinions because: (i) such opinions were inconsistent with other evidence showing the claimant had normal thought process, cooperative behavior, average intelligence, and a positive response to medication; and (ii) they were not acceptable medical sources (Tr. 19).

Medical opinions from a treating physician such as Dr. Dyson are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to

support or contradict the opinion. *Watkins,* 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must ... give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

Thus, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physician Dr. Dyson. He failed to do so here. For example, although the ALJ set forth the proper analysis at the outset of his discussion at step four, he failed to relate that analysis to the evidence in the case and never stated the weight he was assigning to Dr. Dyson's opinions. The ALJ did reference Dr. Dyson's treatment notes as support for his findings related to the claimant's response to medication, but did not explain why he found those notes persuasive despite his apparent rejection of Dr. Dyson's opinions as to the claimant's functional limitations. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Additionally, Social Security regulations provide for the proper consideration of "other source" opinions such as the ones provided by Ms. Brown-Boyd and Ms. Bachman. *See, e. g., Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §416.927),

*quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. § 416.927(c). Although the ALJ rejected the opinions of Ms. Brown-Boyd and Ms. Bachman using the second factor of consistency, he failed to mention or apply the remaining factors (Tr. 19). This was important to do where, as here, Ms. Brown-Boyd and Ms. Bachman: (i) treated the claimant's panic disorder for more than a year, (ii) had the benefit of the entire treatment record from SACMH, and (iii) treated the claimant for agoraphobic symptoms while he was taking medication (Tr. 337-39, 409, 438-50, 522-29).

Because the ALJ failed to properly consider the opinions of Dr. Dyson, Ms. Brown-Boyd, and Ms. Bachman, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**